KEVIN P. MUCK  (CSB No. 120918)
kmuck@fenwick.com
MARIE C. BAFUS  (CSB No. 258417)
mbafus@fenwick.com
JENNIFER A. EBLING  (CSB No. 294574)
jebling@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California  94104
Telephone:     (415) 875-2300
Facsimile:      (415) 281-1350

Attorneys for Defendants Natus Medical Incorporated,
James B. Hawkins and Jonathan A. Kennedy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN COSTABILE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NATUS MEDICAL INCORPORATED, JAMES B. HAWKINS and JONATHAN A. KENNEDY,<br><br>Defendants. | Case No. 4:17-cv-00458-JSW<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing:<br>Date:           January 12, 2018<br>Time:          9:00 a.m.<br>Courtroom:  Courtroom 5, 2nd Floor<br>Judge:         The Honorable Jeffrey S. White |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  THE OPPOSITION IS UNABLE TO IDENTIFY FACTUAL ALLEGATIONS TO SHOW THAT THE CHALLENGED STATEMENTS ARE ACTIONABLE ................. 2

    A.   Plaintiff Fails to Show That the October 16, 2015 Form 8-K Is Actionable .......... 2

        1.   The Opposition Confirms Plaintiff's Inability to Plead Falsity ................. 2

        2.   Plaintiff Is Also Unable to Show Actual Knowledge of Falsity ................ 4

        3.   Plaintiff Is Unable to Show Loss Causation ................................................ 5

    B.   The October 21, 2015 Press Release and Conference Call Are Not Actionable .... 5

        1.   The PSLRA Precludes Any Claim Based on the Challenged Guidance ..... 5

        2.   Both the Safe Harbor and the Absence of Loss Causation Preclude Claims Based on the Challenged Statements Relating to Expected Contract Payments ..................................................................................... 7

        3.   Plaintiff Abandons the Currency Risk Claim ............................................ 9

    C.   The November and December 2015 Statements Do Not Support a Claim............ 9

    D.   Plaintiff Has No Claim for the January 2016 Statements ................................. 11

        1.   The Revenue Projections Are Protected By the Safe Harbor .................. 11

        2.   Statements Regarding Payment Delays Are Not Actionable.................... 11

    E.   The Opposition Does Not Dispute That the Challenged March 2016 Statement Is a Non-Actionable Expression of Optimism ....................................................... 12

III. PLAINTIFF'S ADDITIONAL SCIENTER ARGUMENTS DO NOT COME CLOSE TO SATISFYING THE PSLRA'S STRINGENT STANDARD ................................. 13

    A.   Recognizing That Defendants' Stock Transactions Undermine an Inference of Fraud, Plaintiff Tries to Run From the FAC's Primary Scienter Theory ............ 13

    B.   The Opposition's Miscellaneous Scienter Arguments Are Ineffectual................ 14

IV.  CONCLUSION.............................................................................................. 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Applestein v. Medivation, Inc.*,
   861 F. Supp. 2d 1030 (N.D. Cal. 2012),
   *aff'd*, 561 F. App'x 598 (9th Cir. 2014)...................................................................3, 4

*Bodri v. GoPro, Inc.*,
   2017 WL 1732022 (N.D. Cal. May 1, 2017)...........................................................6, 14

*Brodsky v. Yahoo! Inc.*,
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ......................................................................13

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002)...................................................................................3, 9

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) .............................................................3

*Cement Masons & Plasterers Jt. Pens. Trust v. Equinix, Inc.*,
   2012 WL 685344 (N.D. Cal. Mar. 2, 2012)...............................................................6, 7

*City of Dearborn Hts. Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017).........................................................................12, 13, 15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..................................................................9, 10

*Colyer v. Acelerx Pharms., Inc.*,
   2015 WL 7566809 (N.D. Cal. Nov. 25, 2015)...........................................................3, 6

*Cooper v. Thoratec Corp.*,
   2014 WL 12644026 (N.D. Cal. Nov. 26, 2014)............................................................5

*Curry v. Yelp Inc.*,
   --- F.3d ---, 2017 WL 5583889 (9th Cir. Nov. 21, 2017) ..............................13, 14, 15

*Glenbrook Cap. Ltd. P'ship v. Kuo*,
   2009 WL 839289 (N.D. Cal. Mar. 30, 2009).................................................................3

*Harris v. IVAX Corp.*,
   182 F.3d 799 (11th Cir. 1999).......................................................................................6

*In re Celera Corp. Sec. Litig.*,
   2013 WL 4726097 (N.D. Cal. Sept. 3, 2013) ...............................................................8

*In re Cisco Sys., Inc. Sec. Litig.*,
   2013 WL 1402788 (N.D. Cal. Mar. 29, 2013).........................................................7, 14

*In re Clearly Canadian Sec. Litig.*,
   875 F. Supp. 1410 (N.D. Cal. 1995) ...........................................................................14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................14

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .......................................................... *passim*

*In re Downey Sec. Litig.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ..........................................15

*In re Foundry Networks, Inc. Sec. Litig.*,
  2003 WL 22077729 (N.D. Cal. Aug. 29, 2003)..........................................10

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ...............................................8

*In re Herbalife, Ltd. Sec. Litig.*,
  2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) ...........................................10

*In re HI/FN, Inc. Sec. Litig.*,
  2000 WL 33775286 (N.D. Cal. Aug. 9, 2000)............................................10

*In re Leapfrog Enters., Inc. Sec. Litig.*,
  200 F. Supp. 3d 987 (N.D. Cal. 2016) ..................................................7, 12

*In re Lockheed Martin Corp. Sec. Litig.*,
  272 F. Supp. 2d 944 (C.D. Cal. 2003) .......................................................8

*In re Nimble Storage, Inc. Sec. Litig.*,
  2017 WL 4355570 (N.D. Cal. Oct. 2, 2017)............................................7, 11

*In re Nuvelo, Inc. Sec. Litig.*,
  2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) ...............................................6

*In re Nuvelo, Inc. Sec. Litig.*,
  668 F. Supp. 2d 1217 (N.D. Cal. 2009) ...................................................12

*In re Portal Software, Inc. Sec. Litig.*,
  2005 WL 1910923 (N.D. Cal. Aug. 10, 2005).............................................7

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)..................................................................4

*In re Silver Wheaton Corp. Sec. Litig.*,
  2016 WL 3226004 (C.D. Cal. June 6, 2016) ..............................................3

*In re SolarCity Corp. Sec. Litig.*,
  2017 WL 3453387 (N.D. Cal. Aug. 11, 2017).............................................4

*In re Tibco Software, Inc. Sec. Litig.*,
  2006 WL 1469654 (N.D. Cal. May 25, 2006) ..........................................6, 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Veritas Software Corp. Sec. Litig.*,
  2006 WL 1431209 (D. Del. May 23, 2006)................................................................10

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011)........................................................................................................9

*Jasin v. Vivus, Inc.*,
  2015 WL 3809357 (N.D. Cal. June 18, 2015) .................................................5, 12

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002)....................................................................................14

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) .......................................................12

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)............................................................................................................2

*Metzler v. Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)....................................................................................13

*Oaktree Principal Fund V, LP v. Warburg Pincus, LLC*,
  2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ....................................................4, 11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)..............................................................................4, 6, 8

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001)..............................................................................10, 13

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010).........................................................................................6

*Sudunagunta v. NantKwest, Inc., et al.*,
  No. 2:16-cv-01947-MWF-JEM, slip op. (C.D. Cal. Sept. 20, 2017)........................3

*The WU Grp. v. Synopsys, Inc.*,
  2005 WL 1926626 (N.D. Cal. Aug. 10, 2005).........................................................13

*Washtenaw Cty. Emps. Ret. Sys. v. Celera Corp.*,
  2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) .....................................................3, 8

*Zucco Partners LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009).......................................................................................3, 15

Fenwick & West LLP
Attorneys at Law
San Francisco

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

STATUTES

Securities Exchange Act of 1934
    Section 10(b), 15 U.S.C. § 78j(b) ...............................................................................2, 6, 8, 15
    Section 21E(i)(1), 15 U.S.C. § 78u-5(i)(1) .................................................................................4
    Section 21E(i)(1)(D), 15 U.S.C. § 78u-5(i)(1)(D) ....................................................................4

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I.      **INTRODUCTION**

In their motion to dismiss, defendants[1] challenged plaintiff to identify, for *each* alleged misstatement, particularized facts in the FAC that meet the exacting pleading requirements of the PSLRA.  Plaintiff's opposition ("Opposition" or "Opp.") does not meet that challenge, and ends up confirming that his claims are based on speculation, conclusions and hindsight.

At the center of this case is the October 15, 2015 agreement between Natus' Argentinian subsidiary (Medix) and the Venezuela Ministry of Health, and a series of statements regarding the anticipated benefits from that contract.  Virtually all of those statements are insulated by the PSLRA's safe harbor, and plaintiff's efforts to sidestep that conclusion – by arguing that the statements were not forward-looking, or that the accompanying cautionary language was not meaningful – disregard the language of the statute and controlling Ninth Circuit law.

In addition, the Opposition does not identify contemporaneous facts establishing that the challenged statements were false when made, or that they were known to be false.  Indeed, as to the FAC's principal falsity theory – the unfounded speculation that the Ministry of Health contract may not have been signed – plaintiff tries to obscure his pleading failure in a novel way: he chides defendants for not having submitted the signed agreement with their moving papers.  *See* Opp. at 6, 15 n.17.  Of course, defendants were not obligated to disprove plaintiff's baseless assertion; it was enough to point out that his conjecture is unsupported by the specific facts required by the PSLRA.  Nonetheless, since plaintiff has raised the issue, defendants are submitting the executed agreement *now* so that the Court can see that it was, in fact, *signed on October 15, 2015*.[2]

Plaintiff fares no better with his other falsity arguments.  The Opposition assails defendants' stated expectations for when payments would be received from the Ministry of Health, and the projected revenues that Natus would recognize in future periods, without identifying a single document, source or other fact to show that those statements were not honestly believed to be accurate.  And although the Opposition argues that defendants should have disclosed additional

---

[1] Unless otherwise specified, all defined terms have the same meanings as in defendants' opening brief ("Motion" or "Mot."), and all paragraph references are to the FAC.

[2] *See* Ex. 22 to Reply Declaration of William B. Hill ("Hill Decl."); *see also* Defendants' Supplemental Request to Consider Document Under Incorporation-by-Reference Doctrine.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  details regarding the contract's payment terms, plaintiff does not demonstrate (as the law requires)

2  that the allegedly omitted details rendered any statements materially misleading.

3      Plaintiff also fails to establish loss causation.  What he is required to do – but what the

4  Opposition confirms he cannot do – is show, for each challenged statement, that the allegedly

5  misrepresented facts were still undisclosed when he bought his stock in March 2016.

6      Finally, plaintiff is unable to show that defendants' stock sales support a strong inference of

7  scienter.  To the contrary, defendants' stock transactions during the class period (including the

8  Company's *purchase* of stock) actually undercut an inference of fraud.

9      In sum, plaintiff's claims are unsupported by well-pleaded facts or legal authority, and are

10  ultimately nothing more than impermissible "fraud by hindsight."  The FAC should be dismissed.

11  

12  **II.    THE OPPOSITION IS UNABLE TO IDENTIFY FACTUAL ALLEGATIONS TO SHOW THAT THE CHALLENGED STATEMENTS ARE ACTIONABLE**

13      **A.    Plaintiff Fails to Show That the October 16, 2015 Form 8-K Is Actionable**

14          **1.    The Opposition Confirms Plaintiff's Inability to Plead Falsity**

15      Plaintiff challenges one statement in the October 16, 2015 Form 8-K: "prepayments totaling

16  approximately $69 million are *expected* by the first quarter of 2016."  Opp. at 7 (emphasis added).

17  The Opposition concedes this statement was "technically consistent with the truth," but argues "it

18  would have been material for investors to know" that the contract contemplated payments

19  commencing in late 2015.  *Id*.  That assertion gets plaintiff nowhere.  Even if he could show that

20  this additional detail would have been significant to a reasonable investor (which he does not do),

21  merely alleging that defendants failed to provide "material" information does not state a Section

22  10(b) claim.  *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

23      The Opposition then theorizes that, if Natus had disclosed that payments were scheduled to

24  begin in late 2015, investors might have later inferred there was some "major problem" with the

25  contract.  Opp. at 7-8.  Setting aside that this theory is premised on conjecture and is devoid of

26  supporting facts, it does nothing to satisfy plaintiff's legal obligation: establishing that the omitted

27  information was at odds with what Natus *actually said*, such that the Form 8-K "affirmatively

28  created an impression of a state of affairs that differ[ed] in a material way from the one that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   actually exist[ed]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

2   Plaintiff simply cannot show that the contract's reference to scheduled payments in late 2015 is

3   inconsistent in any way with the statement that Natus expected payments "by the first quarter of

4   2016." As a result, the Form 8-K is not actionable. *See, e.g., Colyer v. Acelerx Pharms., Inc.*,

5   2015 WL 7566809, at *6 (N.D. Cal. Nov. 25, 2015) (no claim where statement was "quite literally

6   true," and did not create an impression differing materially from allegedly omitted information);

7   *Glenbrook Cap. Ltd. P'ship v. Kuo*, 2009 WL 839289, at *11 (N.D. Cal. Mar. 30, 2009) (same).[3]

8          Nor can plaintiff plead falsity by continuing to speculate that the Ministry of Health might

9   not have signed the contract. Opp. at 5-6. Plaintiff concedes his speculation is based on CW1 (*id.*

10   at 6-7), yet does not identify facts showing that a "Purchasing Coordinator" who joined the

11   Ministry of Health *in 2016* would know when the contract was signed. *See Zucco Partners LLC v.*

12   *Digimarc Corp.*, 552 F.3d 981, 995-96 (9th Cir. 2009). Instead, he asks the Court to accept on

13   faith that someone who *later* "prepar[ed] price quotes," processed payments and accounts payable

14   data, and "track[ed] the receipt of goods and services," could speak knowledgeably about when

15   the contract was executed. Opp. at 6. Such conclusory averments fall far short of alleging "with

16   particularity" facts establishing that CW1 was "in a position to be personally knowledgeable of

17   the information alleged." *Zucco*, 552 F.3d at 996. *See also Applestein v. Medivation, Inc.*, 861 F.

18   Supp. 2d 1030, 1037-38 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014).[4]

19   _____

20   [3] The cases cited by plaintiff (Opp. at 8) are inapposite and actually underscore his failure to plead
     that the allegedly omitted details rendered the Form 8-K misleading. *See Washtenaw Cty. Emps.*

21   *Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3-4 (N.D. Cal. Sept. 4, 2012) (efforts to dismiss
     concerns about declining demand for medical tests and unpaid receivables were misleading; while

22   defendants stated accurately that most tests were reimbursed by insurance, they failed to disclose
     the "new development" that patients were being reimbursed directly and the company was
     experiencing difficulty collecting payment from those patients); *Sudunagunta v. NantKwest, Inc.,*

23   *et al.*, No. 2:16-cv-01947-MWF-JEM, slip op. at 16-17 (C.D. Cal. Sept. 20, 2017) (statement that
     "9 million shares *may be* acquired" by an executive was misleading because, under the relevant

24   agreement, the shares were *guaranteed* to vest) (emphasis added).

25   [4] CW1's dependence on unspecified hearsay from other unnamed individuals is another reason to
     disregard his/her allegations. *See* Mot. at 9; *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *18

26   (N.D. Cal. Mar. 24, 2014). Plaintiff's argument that "hearsay does not automatically disqualify" a
     CW (Opp. at 6 n.4, quoting *In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004, at *3 n.3

27   (C.D. Cal. June 6, 2016)), misses the point. While there are rare instances in which hearsay might
     be reliable – for example, in *Silver Wheaton*, where a CW recounted information from another

28   person who was identified by name and where concrete facts regarding that person's knowledge
     were provided – the nebulous hearsay offered by CW1 does not satisfy the PSLRA.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      In any event, the Ministry of Health contract was *signed* on *October 15, 2015*, the day

2   before the Form 8-K was filed.  Hill Decl., Ex. 22.  That fact further confirms CW1's lack of

3   reliability (*Applestein*, 861 F. Supp. 2d at 1038) and disposes of plaintiff's entire theory.

4      Finally, while the FAC advanced two other falsity arguments – the Form 8-K failed to

5   disclose the contract's forum selection provision (¶ 51) and should have attached a copy of the full

6   agreement (¶ 52) – those claims have now been abandoned.  The moving papers described why

7   those allegations are meritless (*see* Mot. at 9-10) and the Opposition offers no response.

8              **2.      Plaintiff Is Also Unable to Show Actual Knowledge of Falsity**

9      The Form 8-K is not actionable for another reason: the challenged statement is forward-

10   looking and plaintiff does not plead defendants' actual knowledge of falsity.  *See* Mot. at 8.  *See*

11   *also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014);

12   *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010); 15 U.S.C. § 78u-5(i)(1).

13      Plaintiff argues the statement is not forward-looking because it is "embedded with

14   misrepresentations of current facts."  Opp. at 12.  That argument misapprehends Ninth Circuit law

15   and the PSLRA.  A statement is forward-looking if, "examined as a whole" and "in context," it

16   relates to "future expectations and performance."  *Intuitive Surgical*, 759 F.3d at 1059, citing

17   *Cutera*, 610 F.3d at 1111-12.[5]  The challenged portion of the Form 8-K – the Company's

18   "expect[ation]" that contract payments would be received "by the first quarter of 2016" – clearly

19   meets that standard.  *See Oaktree Principal Fund V, LP v. Warburg Pincus, LLC*, 2017 WL

20   3187688, at *12 (C.D. Cal. Jan. 17, 2017) (statement is forward-looking if "it predicts events that

21   have not yet occurred").  Moreover, even statements of existing fact are defined by the PSLRA as

22   forward-looking if, as here, they are "assumptions underlying or relating to" future expectations.

23   *Intuitive Surgical*, 759 F.3d at 1059; 15 U.S.C. § 78u-5(i)(1)(D).  Tellingly, the Opposition avoids

24   any mention of *Intuitive Surgical*, *Cutera* or the PSLRA's statutory definition.

25

26   [5] Plaintiff's reference to *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), is
unavailing.  As discussed in the moving papers, the statements in *Quality Sys.* – unlike those at
27   issue here – related to *existing facts*, rather than future events.  Mot. at 11 n.5.  Plaintiff does not
address that distinction.  *See also In re SolarCity Corp. Sec. Litig.*, 2017 WL 3453387, at *13
28   (N.D. Cal. Aug. 11, 2017) (allegedly "mixed" statements were forward-looking under the PSLRA
because they related to future events and reflected information underlying projections).

Plaintiff next argues that defendants had actual knowledge of falsity because they knew the contract was "unsigned" and payments were "already materially late." Opp. at 13. As discussed above, however, the contract was fully executed and the FAC contains no facts to the contrary. Nor does the FAC plead the existence of any "late" payments as of October 16, let alone defendants' knowledge of delays. Thus, any claim based on the Form 8-K must be dismissed. *See Cooper v. Thoratec Corp.*, 2014 WL 12644026, at *8 (N.D. Cal. Nov. 26, 2014).

### 3. Plaintiff Is Unable to Show Loss Causation

Because the facts allegedly misrepresented in the Form 8-K were publicly disclosed before plaintiff bought his Natus stock on March 15, 2016, loss causation is lacking and any claim based on the Form 8-K fails. *See* Mot. at 10-11; *see also Jasin v. Vivus, Inc.*, 2015 WL 3809357, at *8 (N.D. Cal. June 18, 2015). Plaintiff responds with a straw man, arguing that a "partial corrective disclosure" does not preclude him from asserting a claim (Opp. at 19) – even though defendants' argument is *not* based on a "partial" disclosure. Rather, as to the Form 8-K, there was a *complete* corrective disclosure. The market knew prior to March 15, 2016 that, contrary to the one challenged statement in the Form 8-K, Natus would not receive "payments of $69 million" by the first quarter of 2016. ¶¶ 92-94, 97. Even to the extent that plaintiff contends the real problem with the Form 8-K was not disclosing that the contract contemplated payments in late 2015 (Opp. at 7), that fact was disclosed by February 2016 when the agreement was filed with the SEC. ¶ 92.

### B. The October 21, 2015 Press Release and Conference Call Are Not Actionable

Plaintiff challenges three categories of statements in the October 21, 2015 press release and conference call: guidance for the fourth quarter and full year 2015 (¶¶ 53, 59), the amount and timing of expected contract payments (¶¶ 55, 57, 61) and anticipated currency risk (¶ 63). *See* Mot. at 11-15. None of these statements is actionable under the PSLRA.

### 1. The PSLRA Precludes Any Claim Based on the Challenged Guidance

Any claim based on the October 21 guidance[6] is barred by the PSLRA's safe harbor. *See* Mot. at 11-12. Plaintiff concedes the guidance is forward-looking (*see* Opp. at 12), and does not

---

[6] While the FAC assails revenue, EPS and margin guidance, the Opposition only discusses revenue projections and apparently concedes there is no claim as to the other metrics. *See* Opp. at 9-10.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

dispute that it was identified as such in the press release and conference call. *See* Mot. at 11-12; *see also* Exs. 8, 9. Instead, plaintiff tries to avoid the safe harbor with the glib assertion that the Company's risk disclosures were "boilerplate" and "inadequate." Opp. at 12. However, the Opposition eschews any analysis of the detailed cautionary language provided by Natus, including the *11-page discussion of risk factors* in its Form 10-K. Mot. at 12; Ex. 2 at 18-29. As a result, plaintiff does not begin to demonstrate that the cautionary language was not meaningful. *See Cutera*, 610 F.3d at 1110 (safe harbor applied where plaintiffs relied on "conclusory allegations" and failed to show cautionary language was not meaningful); *see also In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 1469654, at *27 (N.D. Cal. May 25, 2006). Nor does plaintiff mention, much less address, the cases cited by defendants in which courts have found that similar references to risk factors in SEC filings were sufficient to invoke the safe harbor. *See* Mot. at 12 (citing cases). *See also Intuitive Surgical*, 759 F.3d at 1059-60; *Colyer*, 2015 WL 7566809, at *10.

Plaintiff fares no better with the argument that the cautionary language was deficient because it did not warn of the risks that actually materialized. Opp. at 12-13. Courts in this district (and elsewhere) have made clear that the safe harbor does *not* "require specification of the particular factor that ultimately renders the forward-looking statement incorrect." *In re Nuvelo, Inc. Sec. Litig.*, 2008 WL 5114325, at *16 (N.D. Cal. Dec. 4, 2008); *Cement Masons & Plasterers Jt. Pens. Trust v. Equinix, Inc.*, 2012 WL 685344, at *5 (N.D. Cal. Mar. 2, 2012).[7] And plaintiff's baffling suggestion that the adequacy of cautionary language is "rarely properly decided … on a motion to dismiss" (Opp. at 13) flies in the face of controlling authority, including *Cutera* and *Intuitive Surgical*. In reality, courts routinely dismiss Section 10(b) claims on precisely that basis, as discussed above and in the moving papers. *See* Mot. at 12, 15, 17, 18.

Plaintiff next argues that, even if the cautionary language was meaningful, the safe harbor does not protect statements made with actual knowledge of falsity. Opp. at 13. That argument

---

[7] *See also Bodri v. GoPro, Inc.*, 2017 WL 1732022, at *13 (N.D. Cal. May 1, 2017) ("cautionary language … does not need to warn of the 'exact risk' that transpires and causes a company to miss a guidance forecast"); *Harris v. IVAX Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) (safe harbor applies even if defendants do not "mention *the* factor that ultimately belies a forward-looking statement"); *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010) ("a defendant need not include the particular factor that ultimately causes its projection not to come true in order to be protected by the meaningful cautionary language prong of the safe harbor").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   was rejected by the Ninth Circuit as inconsistent with the PSLRA.  *Cutera*, 610 F.3d at 1112-13.

2   Under the statute, a statement identified as forward-looking and accompanied by meaningful

3   cautionary language is not actionable *regardless* of defendants' alleged state of mind.  *Id.*  In other

4   words, the safe harbor's "actual knowledge" prong presents an *additional* hurdle for plaintiff *if* –

5   and *only if* – meaningful cautionary disclosures are *not* provided.  *Id.* at 1112-13; *see also In re*

6   *Cisco Sys., Inc. Sec. Litig.*, 2013 WL 1402788, at *14 (N.D. Cal. Mar. 29, 2013).

7       In addition, plaintiff does not dispute that "actual knowledge" requires him to plead facts

8   showing that defendants *knew* the guidance was *unachievable*.  Mot. at 13.  *See also Equinix*, 2012

9   WL 685344, at *6; *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *14 (N.D. Cal.

10  Aug. 10, 2005).  Plaintiff does not argue the FAC meets this standard, and instead offers the bald

11  conclusion that defendants "misleadingly increased … revenue guidance for the fourth quarter and

12  full-year 2015."  Opp. at 9.  To the extent that plaintiff's argument is based on speculation that the

13  contract was unsigned (*id.* at 10), it fails for the reasons discussed above.  More fundamentally,

14  the Opposition cannot identify *facts* showing that, as of October 21, defendants *knew* that the

15  projections were not attainable – let alone facts pleaded with the particularity required by the

16  PSLRA.  *See In re Leapfrog Enters., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1004-05 (N.D. Cal.

17  2016); *In re Nimble Storage, Inc. Sec. Litig.*, 2017 WL 4355570, at *5 (N.D. Cal. Oct. 2, 2017).

18      Loss causation is also lacking.  Natus reported *actual* 2015 results in January 2016.  ¶¶ 75,

19  80.  Thus, even if the October 21 guidance was false, the "truth" was known before plaintiff

20  bought his stock.  *See* Mot. at 14-15.  Unable to address this point, plaintiff ignores it.

**2.    Both the Safe Harbor and the Absence of Loss Causation Preclude
        Claims Based on the Challenged Statements Relating to Expected
        Contract Payments**

23      The Opposition is unable to show that statements regarding expected contract payments (¶¶

24  55, 57, 61) are actionable.  While plaintiff avers generally that the challenged statements were not

25  forward-looking (Opp. at 12), he avoids any analysis of what was actually said.  The FAC, though,

26  makes clear that the statements all relate to what was *anticipated* to occur *in the future*,[8] and are

---

27  [8] *See* ¶ 55 ("we are to receive three payments totaling $69 million by the end of the first quarter of
    2016," with payments "to continue throughout the contract period as we fulfill our requirements");

28  ¶ 57 ("[w]e expect to receive some payments here by the end of the year" and "most likely those

thus forward-looking.  *See Intuitive Surgical*, 759 F.3d at 1059; *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869 (N.D. Cal. Feb. 12, 2015) (even "mixed" statements are forward-looking if "they discuss [the Company's] opportunity for growth *in the future* and the reasons [it] believes those opportunities *will exist*") (emphasis in original).

Plaintiff's suggestion that he can avoid the safe harbor by characterizing his claim as pertaining to "omissions regarding the Contract" (Opp. at 11) is foreclosed by the Ninth Circuit's holdings in *Cutera* and *Intuitive Surgical* – cases that, again, are not even mentioned in the Opposition.  Indeed, plaintiff's argument would improperly "discard [the PSLRA's] statutory framework that provides protection for forward-looking statements, replacing it instead with the notion that mere allegations of omission … would make such statements actionable."  *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944, 950 (C.D. Cal. 2003).[9]

As discussed above, plaintiff fails to show that the cautionary language accompanying the October 21 press release and conference call was not meaningful.  *See* Sec. II.B.1, *supra*; *see also Cutera*, 610 F.3d at 1110.  Consequently, the PSLRA mandates dismissal of any claim based on the challenged statements regarding anticipated contract payments.  *Id*. at 1113.

Even if that were not the case, the FAC pleads no facts to establish falsity or the requisite state of mind.  Mot. at 13-14.  Recognizing that defendants' *actual* statements – *i.e.*, that Natus expected to receive $69 million by the first quarter of 2016, with some portion in late 2015 (¶¶ 55, 57) – were *not false*, plaintiff posits (without any authority) that "investors had a right to know" the contract called for payments to be made in late 2015.  Opp. at 8.  But that argument is a *non sequitur*.  The challenged statements merely indicate when Natus expected to receive payment; they do not purport to recite the contract's payment schedule or address when payments are "due."  Thus, while additional details about contract terms might satisfy the curiosity of a particular investor, Section 10(b) only prohibits "misleading and untrue statements, not statements that are

would extend into the first quarter of next year"); ¶ 61 (Natus expected contract payments to be "lumpy," "very large," and to "stretch out over many years").

[9]  Nor does *In re Celera Corp. Sec. Litig.*, 2013 WL 4726097, at *2 (N.D. Cal. Sept. 3, 2013), support plaintiff's attempt to rewrite the PSLRA.  At most, *Celera* stands for the proposition that a statement relating predominantly to historical fact is not forward-looking; any other reading would be inconsistent with the Ninth Circuit's subsequent decision in *Intuitive Surgical*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

incomplete." *Brody*, 280 F.3d at 1006. Because the omitted information was not necessary to prevent the statements at issue from being misleading – in fact, the "undisclosed" contract terms are *consistent* with the expectation that payments would be received by the first quarter of 2016 – falsity is lacking as a matter of law. *Id*. Not surprisingly, then, the Opposition does not even try to show that defendants knew (or even believed) those statements were false. *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1062-63 (N.D. Cal. 2012).

Nor can plaintiff establish loss causation. By March 15, 2016, the market knew that payments would not be received within the timeframe anticipated by defendants, and the allegedly omitted contract terms had been fully disclosed to investors. *See* Sec. II.A.3, *supra*.

### 3.    Plaintiff Abandons the Currency Risk Claim

The moving papers explained that the statement regarding anticipated currency risk (¶ 63) is not actionable. Mot. at 14. The Opposition offers no contrary argument, and thus concedes that the statement cannot support a claim.

### C.    The November and December 2015 Statements Do Not Support a Claim

The challenged November and December analyst conference statements – all of which were made by Mr. Hawkins – relate to revenue guidance and expected contract payments. ¶¶ 65, 67, 69, 71, 73.[10] Those statements are forward-looking, as discussed previously. *See* Sec. II.A.2., *supra*. Additionally, plaintiff does not dispute that the statements were identified as forward-looking and that Natus referred to its SEC filings for discussion of factors that could cause actual results to vary from projections. Mot. at 15; Ex. 10 at 1; Ex. 11 at 1. Because plaintiff fails to demonstrate that the cautionary language was not meaningful, and his characterization of Natus' risk factors as "boilerplate" is devoid of any facts or supporting analysis (*see* Opp. at 12-13), the safe harbor insulates the November and December statements. *See* Sec. II.B.1., *supra*.

Assuming *arguendo* that plaintiff could sidestep that conclusion, he still fails to plead facts to support a claim. Plaintiff argues the statements were misleading because the first payments contemplated under the contract were "already weeks late." Opp. at 9. *See also id*. at 13.

---

[10] There is no allegation that Mr. Kennedy said anything at the analyst conferences, and thus the challenged statements cannot support a claim against him. Mot. at 15 n.11; *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142-43 (2011). Plaintiff does not contest the point.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

However, he cannot show that such delays are inconsistent with Mr. Hawkins' statements.  As to the guidance, plaintiff must plead facts showing that: (i) the fourth quarter and full year 2015 revenue projections did not take the possibility of delays into account; and (ii) Mr. Hawkins actually knew that the delays would prevent the projections from being achieved.  *In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, at *8 (N.D. Cal. Aug. 29, 2003).  The FAC makes no such showing – nor could it, given that Mr. Hawkins made clear that Natus did not expect to receive the first payment (and begin recognizing revenues) until sometime in December (¶¶ 67, 71, 73), and that the projections only included $4 million in revenues from the contract (*id.*¶ 75).[11]

For the same reasons, plaintiff is unable to show that statements "lauding the Contract" (Opp. at 9) were false.  The fact that *initial payments* might have been delayed by a few weeks does not mean that stated expectations regarding the benefits of a *three-year contract* were false. *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).  Put another way, plaintiff offers no basis to conclude that delays were not already factored into the challenged statements – especially when Natus cautioned that it expected to receive the bulk of the payments in early 2016, rather than late 2015 (¶¶ 67, 71, 73).  *Foundry*, 2003 WL 22077729, at *8.  And the Opposition is devoid of facts purporting to address Mr. Hawkins' state of mind in November and December, or show that he knew (or even believed) his statements were inaccurate. *Juniper*, 880 F. Supp. 2d at 1062-63.

Nor does plaintiff plead loss causation.  As noted above, before plaintiff bought his shares, the market knew that: (i) actual 2015 revenues had fallen short of guidance; and (ii) the payments originally expected by the first quarter of 2016 would not be received in that period. *See* Sec. II.B.1., *supra*.  In fact, plaintiff confirms there was only one "corrective" disclosure after his stock purchase – the April 4, 2016 press release (Opp. at 20) – and does not contend anything in that press release revealed the "truth" about facts allegedly misrepresented in November or December. *See In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 1245191, at *7 (C.D. Cal. Mar. 16, 2015).

---

[11] The FAC thus stands in stark contrast to the cases cited by plaintiff, where detailed internal facts indicated defendants knew forecasts were unachievable.  *See In re HI/FN, Inc. Sec. Litig.*, 2000 WL 33775286, at *3 (N.D. Cal. Aug. 9, 2000) (alleging details of an internal meeting, including date, participants and subject matter, where management discussed "that the company could not maintain its revenue forecast"); *In re Veritas Software Corp. Sec. Litig.*, 2006 WL 1431209, at *7 (D. Del. May 23, 2006) (alleging specific facts, including information from CWs, showing that company's projections were known to be false and based upon "improper revenue recognition").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

D.     **Plaintiff Has No Claim for the January 2016 Statements**

The Opposition argues that two categories of statements in January 2016 support a claim: (i) projected 2016 revenues from the Ministry of Health contract; and (ii) discussion of payment delays.  Opp. at 10-11.  Neither theory has merit.

1.     **The Revenue Projections Are Protected By the Safe Harbor**

Plaintiff contends it was "misleading" to project that the Ministry of Health contract would generate $5 million in revenue in the first quarter of 2016 and $60 million in revenue for the full year.  Opp. at 11 (citing ¶ 75).  However, he does not dispute that defendants identified the guidance as forward-looking *and* detailed factors that could cause results to differ materially – including uncertainties regarding "shipments and revenues associated with … Medix['s] … contract with the Venezuela Ministry of Health."  Ex. 12.  The Opposition does not mention this cautionary language, much less show that it was not meaningful, and the guidance is therefore not actionable.  *See* Sec. II.B.1., *supra*.  Plaintiff is also unable to cite facts suggesting that defendants knew the revenue estimates could not be achieved, which means the safe harbor's second prong independently bars any claim.  *Id.*; *see also Nimble Storage*, 2017 WL 4355570, at *5.

2.     **Statements Regarding Payment Delays Are Not Actionable**

The statements regarding delayed contract payments are also forward-looking because, based on plaintiff's own allegations, they go to whether Natus could expect to receive payment in the future.  Mot. at 17.  The Opposition effectively concedes the point, arguing the statements were misleading because they "lulled investors" into thinking "that *payment would be forthcoming in the first quarter of 2016*."  Opp. at 10 (emphasis added).  And by characterizing the statements as conveying the message that the delay was a "one-time, unforeseeable" event (*id.*), plaintiff confirms they are forward-looking.  *See Oaktree*, 2017 WL 3187688, at *12 (statement that a "write-off was a 'one-time event' is forward-looking because it predicts events that have not yet occurred").  Since plaintiff does not contest that the statements were identified as forward-looking (Mot. at 17; *see also* Exs. 12-14), and is unable to show that the January 2016 cautionary language was not meaningful (*see* Sec. II.D.1., *supra*), the safe harbor shields the challenged statements.

Moreover, plaintiff fails to show that the statements were false or known to be false.  As the

Opposition stresses, plaintiff challenges defendants' expressed *belief* that the payment delay was due to a combination of political, economic and seasonal factors, and their *opinion* that payment would be received in the first quarter of 2016.  Opp. at 10 (citing ¶¶ 75, 82).  Where such statements of belief or opinion are challenged, plaintiff must provide particularized facts showing that defendants "did not hold the belief [they] professed and that the belief is objectively untrue." *Markette v. XOMA Corp.*, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017), quoting *City of Dearborn Hts. Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).  Neither the FAC nor the Opposition cites any such facts.  At most, plaintiff (with the benefit of hindsight) seems to suggest that defendants should have known the prior delay was a portent of future problems and disclosed that purported "fact" to investors.  *See* Opp. at 10.  In so doing, plaintiff improperly "conflate[s] the accuracy of Defendants' predictions and expectations with the sincerity with which Defendants held them."  *Markette*, 2017 WL 4310759, at *5.[12]

Finally, plaintiff cannot dispute that his stock purchase occurred *after* the contract was filed with the SEC (¶ 92), *after* Natus disclosed it had still not received a payment (*id.* ¶ 97), and *after* it allegedly became clear that analysts could "discount the expected revenues" under the contract (*id.*).  These were not, as plaintiff suggests, merely "partial disclosures."  Opp. at 20.  Instead, they fully disclosed the "truth" about delayed payments that was allegedly misrepresented in January 2016, which means plaintiff cannot plead loss causation.  *See Jasin*, 2015 WL 3809357, at *8.

### E.   The Opposition Does Not Dispute That the Challenged March 2016 Statement Is a Non-Actionable Expression of Optimism

The one challenged statement in the March 14, 2016 analyst conference – Mr. Hawkins' comment that "we really believe this is going to happen" (¶ 97) – is a non-actionable "vague expression of optimism."  *See* Mot. at 18-19; *Cutera*, 610 F.3d at 1111.  The Opposition makes no effort to contest this point, and thus concedes that the statement cannot support a claim.[13]

---

[12] By contrast, plaintiffs in *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1231 (N.D. Cal. 2009), alleged statements of existing fact (*e.g.,* regarding clinical drug trials) that were rendered misleading by undisclosed known risks making regulatory approval less likely.  Nothing akin to that is alleged here.  Nor does plaintiff allege facts to show that defendants knew the statements were misleading absent additional information.  *See Leapfrog*, 200 F. Supp. 3d at 1004-05.

[13] Plaintiff also fails to identify facts showing falsity or scienter.  *See* Mot. at 19.  His only real argument is that Mr. Hawkins failed to disclose the contract was not signed (Opp. at 19) – which, as discussed above, is devoid of factual support and wholly inaccurate.  *See* Sec. II.A.1., *supra*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### III.   PLAINTIFF'S ADDITIONAL SCIENTER ARGUMENTS DO NOT COME CLOSE TO SATISFYING THE PSLRA'S STRINGENT STANDARD

#### A.   Recognizing That Defendants' Stock Transactions Undermine an Inference of Fraud, Plaintiff Tries to Run From the FAC's Primary Scienter Theory

The FAC relies heavily on defendants' stock sales to plead scienter (¶¶ 103-107), but plaintiff relegates the issue to a cursory discussion near the end of his brief. *See* Opp. at 18.  The reason is clear: he knows the transactions actually refute an inference of fraud. *See* Mot. at 19-20.

Plaintiff does not dispute that he bears the burden of establishing that stock sales are so "dramatically out of line with prior trading practices" as to be suspicious. *Align Tech.*, 856 F.3d at 621; *Curry v. Yelp Inc.*, --- F.3d ----, 2017 WL 5583889, at *4 (9th Cir. Nov. 21, 2017).  Nor does he contest that the *timing* of Mr. Hawkins' and Mr. Kennedy's sales is consistent with prior practices; in 2015, as in other years, they sold stock in the fourth quarter.  Mot. at 19-20.  Under Ninth Circuit law, trading is not suspicious if it is "in line with prior patterns." *Metzler v. Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008).  *See also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1118 (N.D. Cal. 2009) (trading not suspicious where "Defendants regularly sold stock following earnings releases"); *Tibco*, 2006 WL 1469654, at *20 (same).  The Opposition ignores these authorities.

It is also uncontroverted that the *number of shares* sold in the class period was *less* than the amount sold in the fourth quarter of prior years.  Mot. at 19-20.  Ignoring this crucial fact, plaintiff tries to turn the focus to the gross proceeds from defendants' sales.  Opp. at 18.  That diversionary tactic is unavailing: the Ninth Circuit has explained that courts should examine "the *amount* and percentage of *shares sold* by insiders." *Ronconi*, 253 F.3d at 435 (emphasis added).  *See also Tibco*, 2006 WL 1469654, at *20 (sale proceeds were not suspicious where defendant sold same amount of shares at the same time in the prior year); *The WU Grp. v. Synopsys, Inc.*, 2005 WL 1926626, at *10 (N.D. Cal. Aug. 10, 2005) (same).  In short, defendants followed their *usual pattern* and *sold fewer shares* during the class period, which undermines any inference of scienter.

Finally, plaintiff concedes Natus actually *bought* stock in the class period.  Opp. at 18 n.25.  While he suggests those purchases "do not negate scienter" (*id.*), he offers no supporting analysis and makes no effort to address the cases holding that such purchases are, in fact, inconsistent with

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    an intent to defraud.  *See Cisco*, 2013 WL 1402788, at *8; *Bodri*, 2017 WL 1732022, at *14.[14]

2         **B.    The Opposition's Miscellaneous Scienter Arguments Are Ineffectual**

3         None of the other arguments advanced in the Opposition is adequate to plead scienter,

4    either individually or in the aggregate.  Each is discussed in turn below.

5         *Ministry of Health Contract*.  Plaintiff's suggestion that scienter may be inferred because

6    the contract "was apparently not signed" (Opp. at 14) fails at the most basic level: the contract *was*

7    signed and plaintiff pleads no facts to the contrary.  *See* Sec. II.A.1., *supra*.  Also fruitless is the

8    assertion that defendants "misrepresented the Contract's payment terms and subtly shifted the

9    payment due dates."  Opp. at 15.  As discussed above, none of the challenged statements spoke to

10   when payments were due or misstated contractual terms; rather, defendants stated when they

11   *expected* Natus to *receive* payments, their expectations changed over time, and the FAC fails to

12   plead facts showing that any statement was false or known to be false.  *See* Sec. II.A.-D., *supra*.

13   And averments that defendants "inquir[ed] into" the status of payments (Opp. at 16) are not

14   suggestive of scienter, especially where the FAC pleads no facts showing what information was

15   provided to defendants or that they learned anything contradicting their statements.  *See Lipton v.*

16   *Pathogenesis Corp.*, 284 F.3d 1027, 1035-36 (9th Cir. 2002); *Curry*, 2017 WL 5583889, at *5.

17        *Prior Medix Contract*.  The FAC's vague allegations regarding a 2010 agreement between

18   Medix and the Ministry of Health, which are based entirely on three CWs (Opp. at 16-17), do

19   nothing to plead scienter.  Not only is the FAC is devoid of facts establishing the CWs'

20   knowledge and reliability (Mot. at 13-14 & n.8), the CWs plainly contradict each other.  *Id*.  CW1

21   insists that "final amounts under the [2010] contract were *not paid*" (¶ 44; emphasis added), while

22   CW2 and CW3 claim that final payments *were made* (¶¶ 45, 46).  Accordingly, the Opposition's

23   blithe insistence that the CWs "comport with one another" (Opp. at 17 n.21) is frivolous.  If CW1

24   is correct, then the other two sources must be wrong – and *vice versa*.  Under the PSLRA, when

25   CWs give such markedly different accounts, they are inherently unreliable and cannot support an

26   [14] Plaintiffs' cases do not suggest a different result.  *See In re Clearly Canadian Sec. Litig.*, 875 F.
27   Supp. 1410, 1417 (N.D. Cal. 1995) (not addressing repurchase where there was overwhelming
     evidence that defendants knowingly made false statements); *In re Countrywide Fin. Corp. Sec.*
28   *Litig.*, 588 F. Supp. 2d 1132, 1187 (C.D. Cal. 2008) (repurchase itself was unusual and suspicious
     given shares were repurchased using newly raised capital while insiders increased their selling).

Fenwick & West LLP
Attorneys at Law
San Francisco

inference of scienter.  *In re Downey Sec. Litig.*, 2009 WL 2767670, at *6 (C.D. Cal. Aug. 21, 2009).  Plaintiff offers no authority to the contrary.  Nor does the Opposition explain how the CWs can speak to defendants' state of mind (*see* Mot. at 13 n.8), or how unspecified issues purportedly experienced *years earlier* would show defendants' knowledge *in 2015* that their stated expectations regarding payments under a *new contract* were false.  *Id*. at 13-14.

_Core Operations_.  Invocation of the unpled "core operations" doctrine (Opp. at 17-18) also falls flat.  Plaintiff ignores that the doctrine applies only in "exceedingly rare" cases (*Zucco*, 552 F.3d at 1001), and his argument rests on a fallacious premise: that the contract "was unsigned." Opp. at 17.  Equally unavailing is the fact that payments were not made on the schedule initially contemplated (*id*.), given plaintiff's inability to plead that the challenged statements were inconsistent with, or failed to account for, possible delays (Sec. II.A-D., *supra*).  *See Curry*, 2017 WL 5583889, at *5 (core operations doctrine did not apply where, among other things, allegations did not establish defendants' knowledge of facts at odds with challenged statements).

_Holistic Review_.  Plaintiff urges that his scienter allegations be viewed holistically (Opp. at 18-19), but "holistic" review cannot transform multiple baseless arguments into a viable claim. *See Zucco*, 552 F.3d at 1008.  Indeed, "holistic" review (which also requires consideration of facts *negating* an inference of fraud) makes clear that the FAC is based on impermissible hindsight – and that the only reasonable inference to be drawn from the relevant facts is that defendants honestly and reasonably believed their statements were accurate when made.[15]

## IV.   CONCLUSION

Plaintiff fails to plead the particularized, contemporaneous facts necessary to state a claim for securities fraud under the PSLRA.  The FAC should therefore be dismissed with prejudice.

Dated:  November 27, 2017          FENWICK & WEST LLP

By      /s/ *Kevin P. Muck*
                    Kevin P. Muck

Attorneys for Defendants Natus Medical Incorporated, James B. Hawkins and Jonathan A. Kennedy

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[15]  Plaintiff does not dispute that dismissal of his Section 10(b) claim would also mandate dismissal of his control person claim.  Mot. at 20; *Align Tech.*, 856 F.3d at 623.