United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN COSTABILE,

Plaintiff,

v.

NATUS MEDICAL INCORPORATED, et al.,

Defendants.

Case No. 17-cv-00458-JSW

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 53 54

Now before the Court for consideration is Natus Medical Incorporated ("Natus"), James B. Hawkins, and Jonathan A. Kennedy's (collectively, "Defendants") motion to dismiss the second amended complaint ("SAC"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth below, the Court HEREBY GRANTS Defendants' motion to dismiss, but will once again afford Mr. Costabile leave to amend.

**BACKGROUND**

The facts are essentially unchanged from this Court's prior order granting Defendants' motion to dismiss the first amended complaint ("FAC"). (*See* Dkt. No. 47.) In brief, this case arises out of a three-year $232.5 million supply contract between Natus's wholly-owned Argentinian subsidiary and Venezuela's Ministry of Health ("Supply Contract") and statements Natus's corporate leadership made or endorsed regarding the status of this agreement. Mr. Costabile alleges that Defendants made false or misleading statements and that those statements violated (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and Securities Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5; and (ii) Section

20(a) of the Exchange Act, 15 U.S.C. § 78t. (*Id.*) After the Court granted Defendants' motion to dismiss the FAC, Mr. Costabile filed the SAC on April 6, 2018. (Dkt. No. 50.) Defendants have once again moved to dismiss for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Dkt. No. 53.)

**APPLICABLE LEGAL STANDARD**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court construes the complaint in the light most favorable to the non-moving party and accepts all material allegations in the complaint as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Under Rule 8(a), a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Even under this liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While this standard does not impose a "probability requirement," it nonetheless "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* As Mr. Costabile alleges that Defendants engaged in a pattern of fraudulent or misleading misrepresentations in violation of the Exchange Act and Rule 10b-5, the

SAC must meet both the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See Zucco Partners*, 552 F.3d at 990.

Under Rule 9(b), a plaintiff alleging fraud must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the securities context, the PSLRA requires that a "complaint 'plead with particularity both falsity and scienter.'" *Zucco Partners*, 552 F.3d at 990 (quoting *Gompper v. VISX*, 298 F.3d 893, 895 (9th Cir. 2002)). Accordingly, a securities plaintiff alleging material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). To adequately plead scienter, the PSLRA requires that the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2).

**DISCUSSION**

Neither party has persuaded the Court that it should reverse the positions it took in its order dismissing the FAC. Accordingly, the Court confines its analysis to new, contested allegations in the SAC and the discrete deficiencies the Court identified in its order dismissing the FAC (to the extent Mr. Costabile repleads related allegations in the SAC), to wit: (i) whether Natus's January 2016 statements regarding expectation of payment and guidance are actionable; (ii) whether Mr. Costabile adequately pleads scienter; and (iii) whether the PSLRA's "safe harbor" provision applies to the aforementioned January 2016 statements.[1]

Under Section 10(b) of the Exchange Act it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated under the authority of Section 10(b), makes it unlawful for any person, engaged in

[1] Because the Court has once again held that Mr. Costabile failed to adequately allege scienter, it need not address the parties' loss causation arguments.

interstate commerce, to: (i) employ any scheme to defraud; (ii) make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engage in any act which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: (i) a misrepresentation or omission; (ii) of material fact; (iii) made with scienter; (iv) on which the plaintiff justifiably relied; (v) that proximately caused the allege loss. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). Where, as here, a plaintiff alleges a "control person" claim under Section 20(a) which is based on an underlying violation of Section 10(b), the pleading requirements are identical for both claims. *See, e.g.*, *In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002); *see also City of Dearborn Heights Act 345 Police & Fire Retirement Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) ("Plaintiff has not sufficiently alleged violations of Section 10(b) and Rule 10b-5. And, without 'a primary violation of federal securities law,' Plaintiff cannot establish control person liability." (citation omitted)).

**A. January 2016 Statements Are Not Actionable Misrepresentations or Omissions.**

Under Rule 9(b) and the PSLRA, a plaintiff must "identify[ ] the statements at issue and set[ ] forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Notably, this requirement applies to *each* challenged representation or omission. *See, e.g.*, *Doll v. Stars Holding Co.*, No. 05-cv-01132-MMC, 2005 WL 2811767, at *3 (N.D. Cal. Oct. 27, 2005) (noting plaintiffs must "specify the reasons why each such statement or omission is false or misleading"). For purposes of Rule 10b-5, a statement is misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)). While a statement is not misleading simply because it is incomplete, it is also the case that a "statement that is literally true can be misleading and thus actionable under the securities laws." *Brody v. Transitional Hospitals*



United States District Court
Northern District of California

*Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Here, the remaining statements at issue (in other words, statements the Court has not already ruled are actionable and adequately pled) are statements Natus made in January of 2016 regarding delayed payment and revenue as well as Natus's January 2016 revenue guidance.

Mr. Costabile challenges Defendants' statements, in January of 2016, that Natus's 2015 revenue shortfall was due to a "delay" in the prepayment. (SAC ¶¶ 12, 15, 65, 70, 71.) In its order dismissing the FAC, the Court concluded that these statements were "literally true" and that Mr. Costabile had not demonstrated that "more granular" detail was necessary to prevent investors from being misled. (Dkt. No. 47 at p. 24.) The Court also observed that the statements "disclosed to investors the fact that the prepayment—which Defendants had previously announced was expected by the end of 2015—had not been received." (*Id.*)

The allegations in the SAC regarding Natus's January 2016 statements regarding delayed payment and revenue shortfall are substantially the same as the allegations in the FAC the Court previously deemed deficient. Mr. Costabile has identified no *additional* facts that explain why Natus's referring to a "delay" was materially false or misleading. The January 2016 statements regarding prepayment delay and revenue shortfall remain "literally true."

Mr. Costabile's argument boils down to an insistence that Natus's statement was incomplete: he insists that Natus's omission of the exact amount of delayed prepayment was misleading. Yet, Rule 10b-5 prohibits only misleading or untrue statements—not incomplete ones. *Brody*, 280 F.3d at 1006 (9th Cir. 2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."). Given Natus's disclosure of the fact of the delay, the missing details do not constitute information that would "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* The SAC does not satisfactorily explain why Natus's general statement of delay was misleading—"nor is it self-evident that it was." *Id.* at 1007. Mr. Costabile has therefore, once again, failed to allege facts giving rise to an inference that the January 2016 statements regarding delay in prepayment and revenue shortfall were materially false or misleading.

The January 2016 statements concerning Natus's revenue guidance fare no better. In January filings and conference calls, Defendants announced that the first quarter and full year 2016 revenue guidance would include $5 million and $60 million, respectively, from the Supply Contract. (SAC ¶¶ 12, 65, 70, 71; Dkt. No. 55-1 at p. 85, 95.) Mr. Costabile, as he did in the FAC, maintains that Defendants' inclusion of Supply Contract revenue in this guidance was misleading due to Defendant's failure to disclose all available information about the missed prepayment. However, as discussed above and in this Court's prior order, in January of 2016, Natus disclosed to investors that prepayment had not been received as initially expected. (Dkt. No. 55-1 at p. 85, 92.) Mr. Costabile once again does not allege facts, known to Defendants but unknown to investors, which would give rise to an inference it was misleading for Defendants to include Supply Contract revenue in the January 2016 guidance figures. Specifically, Mr. Costabile has not pleaded facts showing that these revenue projections were unattainable, that Defendants knew the forecasts were unachievable, or that the margin estimates for the Supply Contract were false or known to be false. *See City of Royal Oak Ret. Sys. V. Juniper Networks*. 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) ("Plaintiffs were required to allege specific facts that show how these problems and difficulties necessarily precluded [defendant] from reaching its projected growth targets." (citations and quotations omitted)).

Further, the January 2016 guidance statements are protected under PSLRA's safe harbor. Under the safe harbor, a "defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017). A "forward-looking" statement is any statement regarding (i) financial projection, (ii) management's plans and objectives for future operations, (iii) future economic performance, or (iv) assumptions underlying or related to any of these. *In re Leapfrog*, 200 F. Supp. 3d at 1004 (citation omitted). The January 2016 guidance statements and projections were forward-looking on their face: they predicted future economic performance, laid out financial projections, and described the assumptions underlying those predictions. Further, these guidance statements identified themselves as forward-looking, included cautionary statements, and referred investors to

United States District Court
Northern District of California

United States District Court
Northern District of California

supplemental documentation that provided more specific details about potential risks. (*See* Dkt. Nos. 55-1 at p. 78-79, 86, 92.)[2] Further, the January 27, 2016 conference call advised listeners to consult Natus's SEC filings for risks that could cause actual results to "differ materially." (Dkt. No. 55-1 at p. 92.) The January 2016 guidance statements fall squarely within the safe harbor.[3] *See Police Retirement Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059-60 (9th Cir. 2014).

**B. Mr. Costabile Has Failed to Raise a Strong Inference of Scienter.**

The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" in making those statements. 15 U.S.C. § 78u-4(b)(2)(A). The "required state of mind" is "a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness.'" *In re Quality Sys.*, 865 F.3d at 1144 (quoting *Schueneman v. Arena Pharms.*, 840 F.3d 698, 705 (9th Cir. 2016). To determine whether Mr. Costabile has adequately plead a "strong inference" of scienter, the Court must ask, accepting the SAC's allegations as true and considering them collectively, "would a reasonable person deem the influence of scienter as least as strong as any opposing inference?" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). This requires a dual inquiry. First, the Court must "determine whether any of the plaintiff's allegations, standing alone, is sufficient to create a strong inference of scienter." *In re NVIDIA Corp. Securities Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). Second, if no allegation is by itself sufficient, the Court then

---

[2]Defendants' unopposed request for judicial notice of various SEC filings referenced in the SAC is GRANTED.

[3]The Court's position on the applicability of the safe harbor to the January 2016 guidance statements is consistent with its position that the 2015 guidance statements are *not* protected by the safe harbor. In its prior order, the Court explained that PSLRA's safe harbor did not protect the 2015 guidance statements because those statements did not disclose historical and present facts that might have undermined or weakened the projection. (Dkt. No. 47 at p. 22-23.) When Defendants issued their January 2016 guidance statements, they had disclosed (and re-disclosed) delayed prepayment.

United States District Court
Northern District of California

considers the allegations “holistically” to determine whether, taken together, the allegations create a strong inference of scienter. *Id.*

Taking all inferences in his favor, Mr. Costabile has failed to sufficiently plead scienter. The October, November, and December 2015 statements concerning expectation of payment all suffer from the same essential problem: Mr. Costabile relies on the fact that the statements were made, rather than pointing to supplemental facts that suggest intent to deceive or recklessness. (SAC ¶¶ 85-87.) In other words, Mr. Costabile does not lay out “particular allegations which strongly imply Defendants’ contemporaneous knowledge” the statements were false or misleading when made. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008) (internal quotations, alterations, and citation omitted). As the Court held in its order dismissing the FAC, given the nature of these statements, and given the fact that the statements are not “direct falsehoods which conflict with a clear provision of the Supply Contract,” the fact alone that the statements were made remains insufficient to give rise to a strong inference of scienter. Put another way, that the statements were in effect misleading does not necessarily mean that Hawkins (or the other Defendants) intended to make them so.

Mr. Costabile points to a “new” allegation that Mr. Hawkins knew the terms of the Supply Contract before making the statements at issue. Yet, because the Court has already ruled that Hawkins’s statements on October 21, November 19, and December 1 of 2015 do not directly contradict the terms of the Supply Contract, the SAC’s more explicit statement that Hawkins had access to the Supply Contract and was aware of its terms is in some ways beside the point. (*See* SAC ¶ 86.) There is nothing in the SAC to suggest that Mr. Hawkins did not believe the statements when he made them, that he was deliberately reckless, or that he intended to mislead investors. Finally, with respect to the guidance statement issued in November 2015 and then reiterated that December, the SAC offers only conclusory allegations of scienter. (*See* SAC at 87.) Here, inferring scienter from the fact of a misrepresentation may be “permissible” or even “reasonable,” but it is not “cogent” and “compelling” as the law requires. *See Zucco Partners*, 552 F.3d at 991.

Mr. Costabile likewise fails to allege scienter with respect to the January 2016 statements concerning expected payments and revenue shortfall. Simply put, there are no allegations in the SAC to allow the Court to make the requisite inference that disclosing prepayment delay without Mr. Costabile's desired specificity, without more, constitutes intent to deceive investors or recklessness. Further, the Court has found (twice now) that these statements were literally true. Therefore, the Court does not see how Defendants could have made "literally true" statements "knowing" they were false.[4]

Examining the FAC holistically, Mr. Costabile also fails to plead scienter. Scienter requires at least "deliberate recklessness" or "conscious recklessness"—"a form of intent rather than a greater degree of negligence." *Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010). Assuming arguendo that the Court could interpret certain of Defendants' statements as reckless, the SAC does not provide allegations "sufficient to establish a *strong* inference of deliberate recklessness." *Zucco*, 552 F.3d at 991 (citation omitted, emphasis in original).[5] Mr. Costabile has again failed to demonstrate that the "malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners*, 552 F.3d at 1006.

//

---

[4]As the Court has held that the January 2016 statements regarding guidance are protected by the PSLRA's safe harbor, the Court does not address the adequacy of the scienter allegations specific to these statements.

[5]Mr. Costabile's allegations of scienter are problematic for other reasons. For example, there are no allegations that three of the four confidential witnesses had any direct contact with Defendants. *See Szymborski v. Ormat Techs., Inc.*, 776 F. Supp. 2d 1191, 1201 (D. Nev. 2011) (statements by confidential witnesses not alleged to have any contact with management or individual defendants did not present "cogent and compelling evidence of scienter"). The one confidential witness ("CW4") the SAC alleges *did* directly interact with Hawkins states that Hawkins internally expressed hopefulness about receipt of the prepayments. The Court does not understand Mr. Costabile's position that this internal statement of optimism is evidence of scienter. Moreover, stock repurchase programs, such as Natus's, negate a finding of scienter. *See e.g., In re Tibco Software, Inc. Sec. Litig.*, No. 05-cv-2146-SBA, 2006 WL 1469654, at *21 (N.D. Cal. May 25, 2006).



United States District Court
Northern District of California

United States District Court
Northern District of California

**C. Because the Section 10(b) Claim Fails, the Section 20(a) Claim Also Fails.**

Once again, because Plaintiff has failed to adequately allege a violation of Section 10(b), his Section 20(a) claim necessarily fails. *See, e.g.*, *Align Tech.*, 856 F.3d at 623 ("Plaintiff has not sufficiently alleged violations of Section 10(b) and Rule 10b-5. And, without 'a primary violation of federal securities law,' Plaintiff cannot establish control person liability." (citation omitted)). Accordingly, Defendants' motion to dismiss this claim is also granted.

**CONCLUSION**

For the reasons explained above, the Court grants Defendants' motion to dismiss. The SAC sufficiently alleges that contested Defendants' statements in October, November, and December of 2015 were false or misleading, but the SAC fails to allege that the January 2016 statements regarding delayed payments and revenue were false or misleading. Further, the January 2016 guidance statements are forward-looking statements protected by PSLRA's safe harbor. Finally, Mr. Costabile has failed to allege sufficient facts to show that Defendants made the allegedly misleading statements with scienter. The Court once again affords Mr. Costabile leave to amend the SAC in order to cure the deficiencies identified by this Order.

Mr. Costabile shall file his third amended complaint by **March 1, 2019.**

**IT IS SO ORDERED.**

Dated: December 18, 2018

JEFFREY S. WHITE
United States District Judge